**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LAWRENCE ZUCKER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AV HOMES, INC., JOSHUA L. NASH, PAUL D. BARNETT, MATTHEW COLEMAN, ROGER A. CREGG, ROGER W. EINIGER, PAUL HACKWELL, JONATHAN M. PERTCHIK, MICHAEL F. PROFENIUS, AARON RATNER, JOEL M. SIMON, and TAYLOR MORRISON HOME CORPORATION,<br><br>Defendants. | Case No. ______________<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**CLASS ACTION COMPLAINT FOR VIOLATION OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Lawrence Zucker ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of United States Securities and Exchange Commission ("SEC") made by AV Homes, Inc. ("AV Homes" or the "Company"), Taylor Morrison Home Corporation ("Taylor Morrison" or "Parent"), and other relevant parties and non-parties; (b) review and analysis of press releases and other publications disseminated by certain Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on AV Homes' website concerning Defendants' public statements; and (d) review of other publicly available information concerning AV Homes and Defendants.

## NATURE OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of AV Homes' common stock against the Company and the members of the Company's board of directors (the "Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of AV Homes.

2. On June 7, 2018, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Taylor Morrison Home Corporation ("Taylor Morrison"), Taylor Morrison Communities, Inc. ("Intermediate Parent"), and Thor Merger Sub, Inc. ("Merger Sub"), pursuant to which Merger Sub will be merged with and into AV Homes (the "Merger"), with AV Homes continuing as the surviving entity in the Merger as an indirect subsidiary of Taylor Morrison (the "Proposed Merger").

3. In connection with the Proposed Merger, each share of AV Homes common stock issued and outstanding will have the right to receive either 0.9793 shares of Taylor Morrison Shares, which is referred to as the "Stock Election Consideration", or $21.50 in cash, which is referred to as the "Cash Election Consideration", or $12.64 in cash and 0.4034 Taylor Morrison Shares, which is referred to as the "Mixed Election Consideration." Elections to receive forms of consideration are subject to allocation and proration procedures set forth in the Merger Agreement to ensure that aggregate Merger Consideration will consist of approximately 58.8% cash and approximately 41.2% Taylor Morrison Shares (the "Merger Consideration").

4. The consummation of the Proposed Merger is subject to certain closing conditions, including the approval of the stockholders of the Company. The transaction is expected to close late in the third quarter or early in the fourth quarter of 2018.

5. On July 13, 2018, to convince Company shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a joint registration statement, that was materially incomplete and misleading, which was filed by Taylor Morrison on Form S-4 with the SEC (the "S-4" or the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

6. While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the S-4, they have failed to disclose certain material facts that stockholders need to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the S-4 materially incomplete and misleading.

7. It is imperative that the material information that has been omitted from the S-4 be disclosed to the Company's stockholders prior to any stockholder vote so that stockholders can properly exercise their corporate suffrage rights. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100.

8. Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Merger and from taking any steps to consummate the Proposed Merger unless and until the omitted material information discussed below is disclosed to AV Homes stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and under 28 U.S.C. § 1391 because, among other things, Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and/or where the evidence exists. AV Homes is incorporated in this District, and each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

12. Plaintiff is, and at all relevant times has been, an AV Homes stockholder.

13. Defendant AV Homes, a developer and builder of residential communities in Florida, the Carolinas, Arizona and Texas, is a Delaware corporation whose registered agent for service of process is National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware, 19904. AV Homes maintains its principal executive offices located at 8601 North Scottsdale Road, Suite 225, Scottsdale, AZ 85253. AV Homes' common stock is listed on the NASDAQ under the ticker symbol "AVHI."

14. Defendant Joshua L. Nash ("Nash") served on the Company's Board as a director, and as Chairman thereof, throughout the relevant period.

15. Defendant Paul D. Barnett ("Barnett") served on the Company's Board as a director throughout the relevant period.

16. Defendant Matthew Coleman ("Coleman") served on the Company's Board as a director throughout the relevant period. Coleman is a partner and chief operating officer of the TPG real estate platform and was nominated to the Board by TPG Aviator, L.P. (with its affiliates, "TPG"), which is AV Homes' largest stockholder

17. Defendant Roger A. Cregg ("Cregg") served on the Company's Board as a director and served as the Company's President and Chief Executive Officer ("CEO"), throughout the relevant period.

18. Defendant Roger W. Einiger ("Einiger") served on the Company's Board as a director throughout the relevant period.

19. Defendant Paul Hackwell ("Hackwell") served on the Company's Board as a director throughout the relevant period.

20. Defendant Jonathan M. Pertchik ("Pertchik") served on the Company's Board as a director throughout the relevant period.

21. Defendant Michael F. Profenius ("Profenius") served on the Company's Board as a director throughout the relevant period.

22. Defendant Aaron Ratner ("Ratner") served on the Company's Board as a director throughout the relevant period.

23. Defendant Joel M. Simon ("Simon") served on the Company's Board as a director throughout the relevant period.

24. Defendants named in ¶¶ 14-23, above, are collectively referred as the "Individual Defendants."

25. Defendant Taylor Morrison Home Corporation, a national homebuilder and developer, is a Delaware corporation with its principal executive offices located at 4900 North

Scottsdale Road, Suite 2000, Scottsdale, AZ 85251. Taylor Morrison's common stock is listed on the NYSE under the ticker symbol "TMHC." Pursuant to the Merger Agreement, "Parent and the Company shall cooperate in preparing, and as promptly as reasonably practicable (but no later than thirty-five (35) days) following the date hereof, file the Proxy Statement/Prospectus and Form S-4."

26. The Individual Defendants, along with AV Homes and Taylor Morrison, are collectively referred to as the "Defendants."

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of AV Homes (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

28. This action is properly maintainable as a class action because:

a. The Class is so numerous that joinder of all members is impracticable. As of July 5, 2018, there were approximately 22,183,699 shares of AV Homes common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of AV Homes will be ascertained through discovery;

b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i. whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the S-4 in violation of Section 14(a) of the Exchange Act;

ii. whether the Individual Defendants are control persons pursuant to Section 20(a) of the Exchange Act; and

iii. whether Plaintiff and the other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading S-4;

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

29. AV Homes engages in the homebuilding and community development businesses in Florida, the Carolinas, Arizona, and Texas markets. The company is involved in the acquisition, development, and building of active adult communities, which are age-restricted to

the age 55 and over active adult demographic; and primary residential home communities under local Savvy Homes, Bonterra Builders, Royal Oak Homes, and Oakdale-Hampton brands for first-time and move-up buyers. AV Homes also engages in the construction and sale of residences within the communities. In addition, the Company is involved in other real estate activities, such as the operation of amenities; and the sale of land for third-party development. As of December 31, 2017, AV Homes owned 4,911 developed residential lots; 2,395 partially developed residential lots; 8,776 undeveloped residential lots; and 6,980 acres of mixed-use, commercial, and industrial land. AV Homes was formerly known as Avatar Holdings Inc. and changed its name to AV Homes, Inc. in February 2012. AV Homes was founded in 1970 and is headquartered in Scottsdale, Arizona.

**Background of the Proposed Merger**

30. During the fall of 2016, Defendant Cregg was contacted by a representative of a foreign homebuilding company identified as "Company A" in the S-4. The representative of Company A indicated that Company A might have interest in a substantial investment in AV Homes. No terms or conditions of any such potential transaction were discussed at that time.

31. On February 6, 2017, AV Homes entered into a confidentiality agreement with Company A to facilitate discussions. Over the course of February 2017 and the first half of March 2017, representatives of Company A and Cregg engaged in high-level conversations with respect to a potential transaction between Company A and AV Homes.

32. On March 24, 2017, a representative of Company A sent AV Homes a non-binding preliminary indication of interest in acquiring up to 80% of the outstanding shares of the AV Homes Common Stock at a price between $19.00 and $21.00 (the "Company A Proposal").

33. On March 28, 2017, the Company A Proposal was rejected, but Defendants (excluding Parent) determined to provide Company A with certain additional information so that

Company A could correct its assumptions and revise its proposal. A member of AV Homes' management also sent a revised draft non-disclosure agreement to Company A, including a standstill and non-solicitation provisions, which provisions were offered as a condition to AV Homes offering any further due diligence information to Company A.

34. On March 30, 2017, in a meeting with Cregg, an investment banker presented the strategic merit of a possible business combination between AV Homes and Taylor Morrison (the "AV Homes / Taylor Morrison Presentation").

35. Because of the AV Homes / Taylor Morrison Presentation, on April 12, 2017, Sheryl Palmer, the CEO of Taylor Morrison, called Cregg, to communicate Taylor Morrison's potential interest in a business combination and arranged a breakfast meeting.

36. On April 21, 2017, Ms. Palmer and Cregg met for breakfast to discuss, *inter alia*, the possibility of an acquisition of AV Homes by Taylor Morrison.

37. On September 13, 2017, Nash, Coleman and Cregg met in New York City and discussed the homebuilding industry, including current trends, market positioning and competitors. They also discussed TPG's investment in AV Homes and that TPG would be supportive of a potential sale of AV Homes that could result in TPG disposing of its equity position in AV Homes if the Board determined that pursuing such a transaction would be in the best interests of AV Homes and its shareholders. Following this meeting, Nash requested that Cregg begin the process of selecting one or more investment banks to assist AV Homes and the Board in evaluating the advisability of a potential strategic transaction.

38. On September 26, 2017, Cregg received a telephone call from a representative of Moelis & Company LLC ("Moelis") during which Cregg was told that two homebuilding

companies, identified as "Company B" and "Company C" in the S-4, independently contacted Moelis to express preliminary interest in acquiring AV Homes.

39. On October 11, 2017, Nash, Cregg, Coleman, Profenius and a representative of Moelis met to discuss the homebuilding industry, including current trends, market positioning, competitors and the environment for mergers and acquisitions.

40. On October 18, 2017, Cregg met with representatives of Moelis and Company B to discuss, *inter alia*, a potential business combination. Following this meeting, the representative of Company B informed the representative of Moelis that Company B had determined that it was no longer interested in exploring a potential acquisition of AV Homes.

41. On October 31, 2017, Cregg and Ms. Palmer held a meeting during which they again discussed the potential for an acquisition of AV Homes by Taylor Morrison.

42. On November 2, 2017, Cregg, a representative of Moelis and the CEO of Company C held a meeting during which they discussed, *inter alia*, the possibility of an acquisition of AV Homes by Company C.

43. On November 13, 2017, Cregg received a telephone call from the CEO of a U.S.-based homebuilding company, identified as "Company D" in the S-4, suggesting a meeting to, *inter alia*, explore the possibility of a business combination.

44. On November 27, 2017, Cregg met with the CEO of Company D and discussed, *inter alia*, a potential business combination between AV Homes and Company D. The CEO of Company D indicated that Company D had significant interest in a potential combination and was working with investment bankers.

45. During November 2017, considering TPG's investment in AV Homes and TPG's investment in Taylor Morrison, at the direction of Nash and Cregg, representatives of Wachtell,

Lipton, Rosen & Katz, counsel to AV Homes ("Wachtell Lipton") engaged in discussions with representatives of Kirkland & Ellis LLP, counsel to TPG ("Kirkland") regarding the possibility of forming a special committee of the Board, which consisting only of members of the Board that unaffiliated with TPG.

46. On December 6, 2017, the Board met in executive session and discussed generally potential strategic alternatives for AV Homes and whether, considering TPG's investment in AV Homes and TPG's investment in Taylor Morrison, it would be advisable to form a special committee.

47. On December 8, 2017, Cregg received a non-binding proposal letter from Company D, contemplating an all-stock business combination transaction in which Company D would acquire AV Homes, with the fully diluted stockholders of AV Homes (including, for purposes of Company D's proposal, equity issuable upon conversion of the AV Homes outstanding convertible notes) receiving consideration representing less than 50% of the combined company (the "December 8 Proposal"). The December 8 Proposal represented a 9% premium to the price of AV Homes Common Stock at that time.

48. On December 12, 2017, the Board formed a special committee consisting of Nash, Barnett, Pertchik, Einiger, Profenius and Simon (the "Special Committee") and authorized the Special Committee to review the advisability of a potential strategic transaction involving AV Homes and to oversee and direct, *inter alia*, the process for considering, evaluating and negotiating any such transaction. The Special Committee was also instructed to review on a continuing basis the likelihood of an actual or perceived conflict of interest on the part of the TPG nominees to the Board, and considering such review, to determine whether the Special Committee remained necessary.

49. On December 14, 2017, the Special Committee held a telephonic meeting to discuss its mandate and to review and consider the December 8 Proposal.

50. On December 19, 2017, the Special Committee held an in-person meeting with representatives from AV Homes management and a representative of Wachtell Lipton to evaluate prospective investment bankers. During this meeting, representatives of J.P. Morgan Securities LLC ("J.P. Morgan"), Moelis and Citigroup Global Markets, Inc. ("Citi") presented their qualifications and experience generally. The Special Committee determined to engage both Moelis and J.P. Morgan as its financial advisors. Both J.P. Morgan and Moelis subsequently entered into engagement letters with AV Homes to formalize their engagement as financial advisors to AV Homes.

51. On December 26, 2017, Ms. Palmer called Cregg to inform him that Taylor Morrison remained interested in a potential business combination and that Ms. Palmer intended to send a draft confidentiality agreement to facilitate conversations and due diligence. On December 27, 2017, Ms. Palmer emailed Cregg a draft confidentiality agreement and preliminary due diligence request list. Cregg acknowledged Ms. Palmer's request to negotiate a confidentiality agreement and commence due diligence with respect to a potential transaction.

52. On January 10, 2018, at the direction of the Special Committee, a representative of Moelis informed Company C that AV Homes would be willing to explore the possibility of an acquisition by Company C and proposed that Company C enter into a confidentiality agreement with customary terms including standstill to permit due diligence and potential discussions.

53. On January 11, 2018, the Special Committee met to receive an update from representatives of J.P. Morgan and Moelis. During this meeting, AV Homes' financial advisors offered their view that further engaging with Company C could present the possibility of an offer

to acquire AV Homes at an attractive valuation. Based on this advice and the other considerations reviewed by the Board during this meeting, including the view of the Board that Company C was likely to require a lengthy diligence process, the Board determined to seek to discuss the possibility of a strategic transaction with Company C before determining whether to conduct a process involving other potential counterparties.

54. On January 16, 2018, Company C entered into a customary mutual confidentiality agreement with AV Homes, which included a customary standstill provision.

55. On January 17, 2018, TPG completed a disposition of all its equity interest in Taylor Morrison and TPG's designees to the board of directors of Taylor Morrison (the "Taylor Morrison Board") resigned.

56. On January 17, 2018, the CEO of a U.S. homebuilding company, which the S-4 identifies as "Company E", contacted Cregg to express interest in participating in any potential strategic process.

57. On January 19, 2018, considering TPG's disposition of its interest in Taylor Morrison and the resignation of the TPG designees to the Taylor Morrison Board, the Special Committee was dissolved and transferred its responsibilities to the Board.

58. On the same day, Cregg and representatives of J.P. Morgan and Moelis met with the CEO and other representatives of Company C, during which they discussed, *inter alia*, the possibility of an acquisition of AV Homes by Company C.

59. The Board met as regularly scheduled on January 30, 2018. Following a presentation from J.P. Morgan and Moelis, the Board reviewed and discussed the December 8 Proposal, and received an update with respect to prior contacts with Ms. Palmer and representatives of Taylor Morrison, as well as other possible third parties with whom AV Homes

could engage. The Board determined that the December 8 Proposal did not present a compelling value and instructed Cregg to communicate to Company D that AV Homes was not interested in proceeding with Company D at that time. The Board also determined to wait for Company C to proceed with its internal evaluation to make a complete proposal, which, based on prior interactions with Company C, the Board believed could be ready by mid-February.

60. On February 2, 2018, at the direction of AV Homes, a representative of Moelis met with the Chief Financial Officer of Company C to discuss Company C's due diligence. On February 5, 2018, the AV Homes' financial advisors provided Company C with certain requested financial analysis.

61. Also, on February 5, 2018, Cregg informed the CEO of Company D that the Board had determined not to move forward with a strategic transaction with Company D based on the December 8 Proposal.

62. On February 16, 2018, Cregg received a non-binding indication of interest from Taylor Morrison (the "February 16 Proposal"), in which AV Homes stockholders would receive a mix of cash and Taylor Morrison Common Stock valued at $20.25 per share of AV Homes Common Stock. Ms. Palmer further indicated to Cregg that Taylor Morrison intended the mix of consideration in the proposed transaction to be approximately 50% cash and 50% stock.

63. Also, on February 16, 2018, at the direction of the Board, a representative of Moelis was informed that Company C would be unable to submit a formal proposal for at least another 30 days.

64. On February 21, 2018, the Board held a telephonic meeting. The Board determined that the price reflected in the February 16 Proposal was not compelling. The Board also determined that it was not interested in actively assessing the interest of other potential

counterparties at such time, and that it would reconsider the situation at a future meeting, depending on how circumstances evolved, in particular with respect to Company C.

65. On February 22, 2018, Cregg communicated to Ms. Palmer that the Board did not find the February 16 Proposal sufficiently compelling. As follow up, the representatives of Taylor Morrison inquired about the possibility of receiving additional information to improve Taylor Morrison's proposal.

66. On February 23, 2018, Cregg had lunch with a senior executive of a U.S. homebuilding company identified as "Company F" in the S-4. During this meeting, the representative of indicated a strong interest in exploring a potential acquisition of AV Homes by Company F. In response, Cregg noted that AV Homes was not for sale, but that Company F could submit a transaction proposal.

67. On February 28, 2018, AV Homes received a non-binding indication of interest from Company F, which provided that Company F would acquire AV Homes in an all-cash transaction at a premium of 30% to 40% to AV Homes' 30-day volume weighted average stock price of $16.64, implying a share price of $21.63 to $23.30 (the "February 28 Proposal"). The February 28 Proposal also requested that AV Homes enter into a 45-day exclusivity agreement under which AV Homes would be restricted from engaging with other parties or participating in another sale process while Company F completed its due diligence and negotiated definitive transaction documentation. The February 28 Proposal was subject to completion of due diligence, TPG's entry into a voting agreement and other conditions.

68. Also, on February 28, 2018, at the direction of the Board, a representative of J.P. Morgan met with Ms. Palmer, who reaffirmed Taylor Morrison's interest in AV Homes and requested access to due diligence information to improve its proposal.

69. On March 2, 2018, the Board's Finance Committee (the "Finance Committee") held a telephonic meeting, with representatives from AV Homes management, Wachtell Lipton, J.P. Morgan and Moelis to discuss the February 28 Proposal and to a potential targeted sale process with respect to AV Homes, given the coalescence of recent interest from potential counterparties. The Finance Committee determined, and instructed J.P. Morgan and Moelis, that it would like the financial advisors to run a targeted sale process, which would include Company C, Taylor Morrison, Company E, Company F and a U.S. homebuilding company that the S-4 identifies as "Company G."

70. On March 7, 8, and 9, 2018, respectively, AV Homes entered into customary confidentiality agreements with Taylor Morrison, Company F, and Company G, each of which included what the S-4 referred to as a customary standstill provision. Company E declined to execute a confidentiality agreement.

71. Following management presentations, at the direction of the Board, J.P. Morgan and Moelis requested that Taylor Morrison, Company F and Company G each provide updated proposals during the week of March 26, 2018. As such, between March 12, 2018 and March 26, 2018, the representatives of J.P. Morgan and Moelis received and addressed follow-up due diligence requests from Taylor Morrison, Company F and Company G. Such requested information generally consisted of forward-looking projections.

72. On March 29, 2018, AV Homes received an updated non-binding indication of interest from Taylor Morrison, in which Taylor Morrison would acquire all the outstanding shares of AV Homes Common Stock for $22.00, payable in a mix of cash and Taylor Morrison Common Stock (the "March 29 Proposal"), subject to certain conditions.

73. On March 30, 2018, AV Homes received an updated non-binding indication of interest from Company F to acquire all the outstanding shares of AV Homes Common Stock for $22.00 per share, payable in cash (the "March 30 Proposal"), subject to certain conditions. Also, on March 30, 2018, Company G declined to submit a proposal.

74. On April 13, 2018, after further discussions, AV Homes received an updated non-binding indication of interest from Taylor Morrison, which proposed an acquisition of AV Homes in which Taylor Morrison would acquire all outstanding shares of AV Homes Common Stock for $22.50 per share assuming an approximately equal mix of cash and Taylor Morrison Common Stock, subject to customary closing conditions (the "April 13 Proposal").

75. Later, on April 13, 2018, the Company was advised that Company F would be unable to submit its revised written proposal before April 15, 2018.

76. On April 17, 2018, Company F submitted an updated written non-binding indication of interest, which proposed a business combination in which Company F would acquire all the outstanding shares of AV Homes Common Stock for $22.75, payable in cash, subject to certain conditions (the "April 17 Proposal").

77. On April 17, 2018, the Board discussed the April 13 Proposal and the April 17 Proposal and instructed the Company's advisors to provide Taylor Morrison and Company F with term sheets describing key proposed terms with respect to a potential acquisition of AV Homes, including that AV Homes would be permitted to terminate the merger agreement to accept a superior proposal, subject to customary procedural restrictions, that the termination fee payable by AV Homes would be equal to 2.75% of the equity valuation of AV Homes in the transaction, that TPG's voting agreement would terminate upon a change in recommendation by the Board and that the targeted announcement date for the potential transaction would be May

14, 2018. The Board also instructed its financial advisors to request that both potential counterparties improve the financial terms of their proposals.

78. After negotiation, on April 23, 2018, Ms. Palmer emailed Cregg a revised term sheet (together with the price proposal of $23.00 per share, of which 70% would be comprised of cash and the remaining 30% comprised of Taylor Morrison Common Stock, from the April 20 Proposal, the "April 23 Taylor Morrison Proposal"). The revised term sheet no longer included contractual exclusivity and no longer locked-up TPG shares in the event of a change of recommendation by the Board but retained the "naked no vote" break fee.

79. Also, on April 23, 2018, Company F sent a revised non-binding proposal to acquire all outstanding shares of AV Homes Common Stock for $23.00 per share in cash and a contingent value right, which Company F estimated to be worth at least an approximate $0.50 per share of AV Homes Common Stock (a "CVR") (the "April 23 Company F Proposal"). The CVR would have entitled its holders to cash payments equal to a percentage of the after-tax gain from the sale or sales of specified non-core plots of land owned by AV Homes.

80. On April 23, 2018, after receiving the April 23 Taylor Morrison Proposal and the April 23 Company F Proposal, the Board determined to proceed with negotiations with Taylor Morrison so long as it increased its proposed purchase price, as doing so would maximize the likelihood of successfully negotiating and consummating a transaction.

81. After further discussion, on April 25, 2018, at the direction of Taylor Morrison, representatives from Citi informed representatives of J.P. Morgan and Moelis that Taylor Morrison was prepared to offer a headline purchase price of $23.05 per share.

82. On May 17, 2018, following a meeting of the Taylor Morrison Board, representatives of Citi communicated that AV Homes would receive a revised proposal at a

lower share price due to diligence findings, higher than expected transaction costs and recent declines of Taylor Morrison's stock price.

83. On May 23, 2018, at the direction of Taylor Morrison, representatives from Citi communicated to representatives of J.P. Morgan and Moelis that Taylor Morrison was prepared to move forward with a deal at $21.00 per share (the "May 23 Proposal"). At that time the representatives reiterated that Taylor Morrison was committed to announcing a after its May 30-31, 2018 Taylor Morrison Board meeting. Taylor Morrison said that the key drivers of the reduced offer price were its community-level underwriting, its more conservative view on the gross margins of certain AV Homes' properties, estimated one-time transaction costs and decreases in Taylor Morrison's stock price.

84. On May 24, 2018, the Board decided to reject the May 23 Proposal and suspend Taylor Morrison's access to the data room. Later that day, the representatives of J.P. Morgan and Moelis communicated to representatives of Citi that AV Homes was not prepared to transact with Taylor Morrison on the terms set forth in its May 23 Proposal.

85. On May 29, 2018, representatives of Citi communicated a revised proposal on behalf of Taylor Morrison to representatives of J.P. Morgan and Moelis, which proposal consisted of cash consideration of $21.50 per share and stock consideration valued at $21.00 per share (based on a fixed exchange ratio set at the time of the transaction announcement) (the "May 29 Proposal"). The cash consideration was to represent approximately 62.5% of the total consideration, and the stock consideration was to represent approximately 37.5% of the total consideration, implying a blended purchase price of $21.31 per share of AV Homes Common Stock, which represented a 15% premium to the closing price of the AV Homes Common Stock on the Nasdaq on May 29, 2018. The May 29 Proposal also requested an agreement from TPG to

elect 100% stock consideration for its shares, representing the entirety of the stock component of the proposed consideration. In addition, Taylor Morrison proposed a targeted announcement date of June 4, 2018 and noted that there were no meaningful outstanding diligence items.

86. Separately on May 29, 2018, representatives of the financial advisor to Company F reached out to Cregg to generally inquire about AV Homes. During this call, Cregg inquired as to whether Company F had provided any further information to its financial advisor with respect to Company F's interest in a transaction with AV Homes. In response, Company F's financial advisor noted that Company F remained interested in an acquisition of AV Homes.

87. Negotiations proceeded to reach the Merger Agreement. Additionally, on June 5, 2018, at the direction of AV Homes, representatives of Moelis returned a call to Company F's financial advisor and explained to Company F's financial advisor that AV Homes was close to announcing a transaction. In response, Company F's financial advisor indicated that Company F continued to be interested in a potential transaction. Although the specific terms of Company F's continued interest were not discussed during the conversation, and the financial advisor to Company F did not take the opportunity to confirm the price at which Company F remained interested in a potential transaction, the financial advisor to Company F did indicate that Company F was not prepared to increase its offer price.

88. AV Homes and Taylor Morrison jointly announced the transactions on the morning of June 7, 2018.

**The Company Announces the Proposed Merger**

89. On April 30, 2018, the Company and Taylor Morrison issued a joint press release announcing the Proposed Merger entitled "Taylor Morrison Announces Agreement to Acquire AV Homes at $21.50 Per Share." The press release stated, in pertinent part:

Highlights:

- Acquisition price of approximately $490 million yields an attractive purchase multiple of 1.1x book
- Expect $30 million in annualized synergies from acquisition
- Growing the affordable active adult product offerings in Orlando, Phoenix and Raleigh to complement existing Taylor Morrison communities
- Expansion into the more affordable, first-time buyer segment
- Significantly increases scale and market share in five major housing markets

Taylor Morrison Home Corporation (NYSE: TMHC), a leading national homebuilder and developer, and AV Homes, Inc. (NASDAQ: AVHI), a developer and builder of residential communities in Florida, the Carolinas, Arizona and Texas, today announced that they have entered into a definitive agreement pursuant to which Taylor Morrison will acquire all of the outstanding shares of AV Homes common stock at $21.50 per share in a cash and stock transaction valued (including outstanding AV Homes debt) at approximately $963 million. The transaction has been unanimously approved by the Boards of Directors of both Taylor Morrison and AV Homes and will be submitted to the stockholders of AV Homes for approval. The transaction is expected to close late in the third quarter or early in the fourth quarter of 2018 and the closing is subject to customary closing conditions. TPG Capital, the holder of approximately 40% of AV Homes common stock, has agreed to vote all of its shares of AV Homes common stock in favor of the transaction.

Under the terms of the agreement, AV Homes stockholders will have the option to receive, at their election, consideration per share equal to (i) $21.50 in cash, (ii) 0.9793 shares of Taylor Morrison Class A common stock or (iii) the combination of $12.64 in cash and 0.4034 shares of Taylor Morrison Class A common stock, subject to an overall proration of approximately 60% cash and 40% stock. On a pro forma basis, AV Homes stockholders are expected to own up to approximately 10% of the combined company, subject to conversion mechanics applicable to holders of AV Homes' convertible notes.

"The joining of Taylor Morrison and AV Homes supports our strategic growth priority by bringing us deeper into five of our

> current markets, adding Jacksonville to the portfolio, and further expanding our offerings in the affordable first-time buyer and active adult consumer segments," said Sheryl Palmer, chairman and CEO of Taylor Morrison. "This transaction, subject to customary closing conditions, will serve as a means to further enhance our land pipeline in the right locations, potentially offsetting some future land purchases, while simultaneously delivering land to our homebuilding operations with mature communities. What's more, we believe the commonalities in product offerings and consumer groups will create opportunities for scale efficiencies and enhance our national footprint while creating top and bottom-line performance improvement."
>
> Roger A. Cregg, President and Chief Executive Officer of AV Homes, Inc., said, "We are pleased with the significant progress AV Homes has made over the last several years executing our growth strategy, including being recognized as the fastest growing public homebuilder in both 2015 and 2016. Through our focus on consumer segmentation and geographical diversification, we have grown our position in both existing and new attractive metropolitan areas. By combining with Taylor Morrison, one of the country's finest homebuilders, we will create a premier homebuilder in some of the country's highest growth areas and drive accretive returns for our shareholders for years to come."

**The Preclusive Deal Provisions**

90. In addition to failing to conduct a fair and reasonable sales process, the Individual Defendants agreed to certain deal protection provisions in the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior offer for AV Homes.

91. Pursuant to the Merger Agreement, Defendants agreed to, *inter alia*: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even continuing discussions and negotiations with potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish Parent with the terms of any competing bid and confidentiality agreement; (iii) a matching rights provision which gives Parent three business days to match any unsolicited superior acquisition proposal the Board receives; and (iv) a provision that requires the Company

to pay Parent a termination fee of $10,000,000 if the Company, among other things, signs an alternative acquisition agreement.

92. Additionally, concurrently with the execution of the Merger Agreement, TPG Aviator, L.P. ("TPG"), called the "Key Stockholder" in merger-related filings, and Taylor Morrison entered into a voting agreement (the "Voting Agreement"), providing, among other things, that TPG will vote all of its Company Shares in favor of the Merger Agreement. As described by the S-4, "TPG is the beneficial owner of, and has sole or shared voting power with respect to, 9,215,017 shares of AV Homes Common Stock.… Accordingly, TPG holds approximately 41%[[1]] of the aggregate voting power attributable to the outstanding shares of AV Homes Common Stock."

93. Additionally, pursuant to the Company's April 18, 2018, proxy solicitation, AV Homes' directors and executive officers as a group own an additional 7.7% of the Company's shares, and the S-4 states that "[i]t is expected that AV Homes' directors and executive officers will vote their respective shares **FOR** the adoption of the Merger Agreement, **FOR** the named executive officer Merger-related compensation proposal and **FOR** the approval of the adjournment proposal."

94. These deal protection provisions, particularly when considered collectively and in conjunction with the fact that the Company's directors and executive officers and its Key Shareholder own 49.24% of the outstanding common stock of AV Homes, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of AV Homes.

[1] This amount is 41.54% of the outstanding common shares.

95. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that AV Homes' shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Merger.

**Interests of the Officers and Directors of AV Homes in Completing the Proposed Merger**

96. Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Merger. The following chart, taken from the S-4, shows the potential payouts to AV Homes' officers and directors as a result of their exchange of shares of AV Homes for the Merger Consideration:

**Golden Parachute Compensation**

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites / Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Roger A. Cregg | 5,250,000 | 4,884,839 | 50,036 | 10,184,875 |
| Michael S. Burnett | 1,350,000 | 1,406,772 | 51,752 | 2,808,524 |
| S. Gary Shullaw | 960,000 | 910,754 | 51,495 | 1,922,249 |

(1) The cash payments payable to each named executive officer consist of a severance payment equal to the sum of (a) 24 months (36 months, in the case of Mr. Cregg) of base salary (which amount is payable in installments in accordance with AV Homes' normal payroll practices) and (b) two times (three times, in the case of Mr. Cregg) the officer's target annual bonus (which amount is payable in a lump sum). The severance payments are "double-trigger" (i.e., payable upon a qualifying termination following the occurrence of a change in control).

(2) As described above, all unvested AV Homes options will be settled as of the effective time of the Merger, and all unvested AV Homes restricted stock awards and AV Homes RSU awards will be converted into substantially similar Taylor Morrison awards and continue to vest in accordance with their ordinary schedules, or if earlier, upon a qualifying termination following the Merger. The vesting of AV Homes options is "single-trigger" (i.e., payable upon the occurrence of a change in control), while the vesting of AV Homes restricted stock awards and AV Homes RSU awards is "double-trigger." Set forth below are the values of each type of unvested equity-based award that would be payable upon the effective time of the Merger, based on a price per share of AV Homes Common Stock of $21.44, assuming applicable performance criteria with respect to performance-based AV Homes restricted stock awards are fully satisfied, applicable performance criteria with respect to performance-based AV Homes RSU awards are achieved at target levels, and less the applicable exercise price in the case of unvested AV Homes options.

| Name | AV Homes Options ($) | AV Homes Restricted Stock Awards ($) | AV Homes RSU Awards ($) |
|---|---|---|---|
| Roger A. Cregg | 423,947 | 1,791,119 | 2,669,773 |
| Michael S. Burnett | 116,406 | 546,184 | 744,182 |
| S. Gary Shullaw | 75,966 | 353,310 | 481,478 |

(3) The amount in the table equals the estimated value of health benefit continuation for each named executive officer for 24 months (36 months, in the case of Mr. Cregg). All such benefits are "double-trigger."

**Interests of the Financial Advisors to the Proposed Merger**

97. During the two years preceding the Merger Agreement, J.P. Morgan and its affiliates have had commercial or investment banking relationships with AV Homes, Taylor Morrison and TPG and certain of TPG's affiliates, including acting as joint lead arranger and

bookrunner on the AV Homes revolving credit facility which closed in May 2017, joint lead bookrunner on the AV Homes offering of securities which closed in May 2017, joint lead bookrunner on the Taylor Morrison offerings of equity securities which closed in January 2017, March 2017 and May 2017, joint lead arranger and bookrunner on the TPG revolving credit facility which closed in May 2018, joint lead bookrunner on an affiliate of TPG's offering of equity securities which closed in March 2018, joint lead bookrunner on an affiliate of TPG's offering of debt securities which closed in January 2018 and joint lead bookrunner on an affiliate of TPG's offering of equity securities which closed in June 2017. In addition, J.P. Morgan's commercial banking affiliate is an agent bank and a lender under outstanding credit facilities of AV Homes and certain affiliates of TPG, for which J.P. Morgan receives customary compensation or other financial benefits. In addition, J.P. Morgan and its affiliates hold, on a proprietary basis, less than 1% of the outstanding common stock of each of AV Homes and Taylor Morrison.

98. During the two-year period preceding delivery of its opinion, the aggregate fees received by J.P. Morgan from AV Homes were $3.1 million and from Taylor Morrison were $2.7 million.

99. Pursuant to an engagement letter dated February 22, 2018, J.P. Morgan received from AV Homes a retainer fee of $175,000 and a fee of $1.50 million for the delivery of its fairness opinion.

100. Pursuant to an engagement letter dated February 19, 2018, Moelis received a retainer of $175,000 upon execution of the engagement letter, which will be credited against its transaction fee, and will receive a fee for its services estimated to be $6,100,000, $1,000,000 of which became payable in connection with the delivery of its fairness opinion, regardless of the

conclusion reached therein, and the remainder of which is contingent upon completion of the Merger.

**MATERIALLY FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

101. On July 13, 2018, Taylor Morrison filed the S-4, which had been reviewed and approved by AV Homes' Board, in connection with the Proposed Merger containing background information summarized above and the financial analyses prepared by the financial advisors in support of their fairness opinions favoring the Proposed Merger. The S-4 solicits the Class to vote in favor of the Proposed Merger.

102. Defendants were obligated to carefully review the S-4 before it was filed with the SEC and/or disseminated to the Company's shareholders to ensure that it did not contain any materially false and misleading statements or material misrepresentations or omissions. However, the S-4 misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Financial Projections Prepared by AV Homes' Management**

103. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, "Fantasy Math Is Helping Companies Spin Losses Into Profits", N.Y. Times, Apr. 22, 2016, *available at* https://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html.

financial measures that demonstrate the SEC's tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

104. The S-4 provides several projections for non-GAAP metrics, including adjusted-EBITDA and Unlevered Free Cash Flow, but fails to disclose necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

105. Failure to provide complete and full disclosure of the line item projections for the metrics used to calculate the above-mentioned non-GAAP metrics leave AV Homes shareholders without the necessary, material information to reach a fully-informed decision concerning the Company, fairness of the merger consideration, and whether to vote in favor of the Proposed Merger, especially given the disparity between the Unlevered Free Cash Flow estimates of the financial advisors:

In connection with its opinion to the AV Homes Board, J.P. Morgan calculated, based on the Projections provided by AV Homes management to J.P. Morgan, unlevered projected free cash flows for the third and fourth quarters of fiscal year 2018, and fiscal years 2019-22:

| | H2 2018E | 2019E | 2020E | 2021E | 2022E |
|---|---|---|---|---|---|
| Unlevered Free Cash Flow (millions)(1) | $ (39) | $ (94) | $ (68) | $ 34 | $ 96 |

(1) The unlevered free cash flow figures for AV Homes utilized by J.P. Morgan represent estimated net operating profit after tax of AV Homes for the last two fiscal quarters of 2018 and the fiscal years 2019-22, plus depreciation and amortization, less capital expenditures, less acquisitions, less change in land and other inventories, less change in working capital, in each case derived from the Projections.

In connection with its opinion to the AV Homes Board, Moelis calculated, based on the Projections provided by AV Homes management to Moelis, unlevered projected free cash flows for the third and fourth quarters of fiscal year 2018, and fiscal years 2019-22:

| | H2 2018E | 2019E | 2020E | 2021E | 2022E |
|---|---|---|---|---|---|
| Unlevered Free Cash Flow (millions)(1) | $ (27) | $ (73) | $ (58) | $ 43 | $ 106 |

(1) The unlevered projected free cash flow figures for AV Homes utilized by Moelis represent estimated net operating profit after tax of AV Homes for the last two fiscal quarters of 2018 and the fiscal years 2019-22, plus depreciation and amortization, less capital expenditures, less acquisitions, less change in land and other inventories, less change in working capital, plus share-based compensation and plus deferred tax assets utilized, in each case derived from the Projections.

[3] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. Securities and Exchange Commission (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

106. To make the projections included on page 87 of the S-4 materially complete and not materially misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

107. Additionally, the S-4 notes that on June 5, 2018, the day before the fairness opinions were delivered and after negotiations were substantially completed, forecasts provided by management of AV Homes were adjusted by AV Homes management to reflect updated information regarding AV Homes' estimated cash balance at June 30, 2018, and projected real estate inventory spend for the second half of 2018, to reflect updated information regarding AV Homes' estimated cash balance at June 30, 2018, and projected real estate inventory spend for the second half of 2018. Given that the transaction was negotiated when one set of projections were being used and the fairness opinions were issued, in part, using revised numbers, shareholders must receive both sets of numbers, or at least an indication of what the changes were, so that they can evaluate the fairness of the transaction and the transaction process.

**Financial Projections Prepared by Taylor Morrison**

108. The S-4 discloses that Moelis "reviewed certain internal information relating to the business, earnings, cash flow, assets, liabilities and prospects of Taylor Morrison furnished to Moelis by Taylor Morrison" and "reviewed certain internal information relating to cost savings, synergies and related expenses expected to result from the Merger (the "Expected Synergies") furnished to Moelis by Taylor Morrison[.]"

109. It is not disclosed whether J.P. Morgan also reviewed internal information relating to the business, earnings, cash flow, assets, liabilities and prospects of Taylor Morrison furnished to it by Taylor Morrison. Whether J.P. Morgan reviewed the same information as Moelis, similar information, or no such information must be disclosed.

110. Shareholders are now being asked to choose between the "Stock Election Consideration", the "Cash Election Consideration", and the "Mixed Election Consideration" without knowing prospects of Taylor Morrison furnished to Moelis by Taylor Morrison or the Expected Synergies, which must be disclosed so Company stockholders can make an informed decision. Indeed, while the S-4 acknowledges that "[a] summary of these projections [from AV Homes] (the "Projections") is included below solely because it was among the financial information made available to our financial advisors for use in connection with their financial analyses and opinions" the S-4 does not make the same disclosure, at any level, regarding the prospects of Taylor Morrison despite acknowledging that such information was also among the financial information made available to AV Homes' financial advisors for use in connection with their financial analyses and opinions.

**Existence of Standstill and Don't-Ask-Don't-Waive Provisions**

111. The Company entered into confidentiality agreements with at least Companies A, C, F, and G to facilitate discussions regarding strategic transactions.

112. The Board failed to negotiate a go-shop period with Taylor Morrison, and rebuffed the higher indications of interests of, at least, the April 23 Company F Proposal.

113. Despite this failure to shop the Company fully and the fact that the Board approved a deal with an implied value lower than the higher indication of interest, the S-4 is silent as to the terms of the confidentiality agreements entered by the Company with interested parties.

114. The S-4 omits whether these confidentiality agreements contained standstill provisions, or don't-ask-don't-waive ("DADW") provisions, that would forbid any of the previously contacted parties from making a topping bid now, including Companies A, C, F, and

G, who would have the most likely interest in submitting a superior proposal to that of Taylor Morrison.

115. The absence of this disclosure is particularly material where, as here, the Merger Agreement explicitly prevents AV Home from waiver or release of, or fail to enforce, any standstill or similar agreement. This term of the Merger Agreement strongly implies that the confidentiality agreements did, in fact, contain undisclosed standstill terms. Thus, the terms of these confidentiality agreements – and specifically any standstill or DADW terms – must be disclosed to Company stockholders.

**Process Related Material Omissions and/or Misstatements**

116. There are process-related issues that must be disclosed in the S-4 so that the AV Homes shareholders have a full understanding regarding the sales process. The "Background of the Merger" section states, *inter alia*, that: on January 11, 2018, the Board determined to seek to discuss the possibility of a strategic transaction with Company C before determining whether to conduct a process involving other potential counterparties, but it was not until January 19, 2018 that, in light of TPG's disposition of its interest in Taylor Morrison and the resignation of the TPG designees to the Taylor Morrison Board, the Special Committee was dissolved and transferred its responsibilities to the Board. The timing of this decision thus must be explained so shareholders can determine if the Individual Defendants were acting appropriately.

117. The "Background of the Merger" section also states that on March 2, 2018, the Finance Committee held a telephonic meeting and instructed J.P. Morgan and Moelis that it would like the financial advisors to run a targeted sale process, which would include Taylor Morrison, and Companies C, E, F and G.

118. The S-4 does not make a disclosure of material facts of how or why this pivotal decision was made by the Finance Committee, which was not entrusted with the power to make

such a decision, or any decision at all, after the Special Committee was dissolved and transferred its responsibilities to the full Board. The Finance Committee is not mentioned elsewhere in the S-4 and that must be explained so shareholders can determine if the Individual Defendants were acting appropriately.

**<u>The AV Homes Fairness Opinions</u>**

119. With respect to *Discounted Cash Flow Analysis* of AV Homes, the S-4 fails to disclose how the Company's financial advisors determined, and the reasons for using, the following numbers and ranges: (i) a terminal value growth rate ranging from (0.5)% to 0.5% to the unlevered free cash flow of AV Homes during the final year of the 5-year period (for J.P. Morgan) as compared with Moelis having used range of estimated terminal values derived by applying a range of multiples of 0.95x to 1.15x to AV Homes' estimated real estate inventory value (excluding capitalized interest in inventory) at December 31, 2022, of $1,360 million, and; (ii) how J.P. Morgan determined to use discount rates from 8.75% to 9.75%, based upon capitalization and market data for AV Homes and the other selected public companies referred to above, while Moelis used a range of discount rates of 8.0% to 10.0% based on an estimate of AV Homes' weighted average cost of capital ("WACC") using the mid-year convention

120. With respect to Moelis' *Selected Companies Analysis* and J.P. Morgan's *Public Trading Multiples* analysis, the S-4 fails to disclose: (i) the basis or parameters used, if any, for the determinations that (a) the companies selected were similar for purposes of the analysis and (b) the financial information of the selected companies were similar for purposes of the analysis, and; (ii) the parameters for determining the market size and product profile for the selected companies.

121. With respect to J.P. Morgan's *Selected Transaction Analysis and* Moelis' *Selected Precedent Transactions Analysis*, the S-4 fails to disclose: (i) the reasons or criteria used for each

of the selected transactions; (ii) the Precedent Transaction Enterprise Value Multiple of EBITDA Reference Ranges one year and two year forward for each of the selected transactions; and (iii) the Precedent Transaction Enterprise Value Multiple of EBITDA trailing twelve months: for each of the selected transactions.

122. With respect to its *Selected Precedent Transactions Analysis*, Moelis noted that "In reviewing the characteristics of the selected precedent transactions for purposes of determining a reference range … five of the six transactions were outside Moelis' selected multiple range." Moelis further noted that it "believed that AV Homes' valuation multiple fell within the range taking into account that: WCI Communities, Inc. transacted at a multiple within the selected range and was similar to AV Homes as it was a public company with a focus on active adult product in the Florida market; Taylor Woodrow Holdings (USA), Inc. / Monarch Corporation was sold early in the current market cycle when overall valuations were lower; Stanley Martin Communities, LLC held leading market share in an attractive Washington, D.C. market and had a long operating history, leading to an enhanced multiple; Polygon Northwest Company LLC held leading market share in highly attractive and high barrier-to-entry markets in Seattle and Portland, driving a premium to other precedents; and Moelis believed that UCP, Inc. and RSI Communities LLC represented less relevant transactions due to their limited operating history. Moelis does not adequately explain these differences given that it "also noted that certain data underlying the selected precedent transactions pre-dated and/or does not reflect the impact of the federal tax legislation enacted in December 2017, which generally would be expected to drive an increase in transaction values" and the Strategic Consideration listed in the S-4 that "AV Homes currently has a growth profile, management team and geographic footprint that makes it an attractive acquisition target;" and the fact that On September 26, 2017, Cregg received a

telephone call from Moelis advising Cregg that two different homebuilding companies had independently contacted Moelis to express preliminary interest in acquiring AV Homes and asking to arrange a meeting. Given that Moelis identified AV Homes as a strong candidate to be acquired, it must further explain how it came to determine that five of the six transactions were outside Moelis' selected multiple range.

123. With respect to J.P. Morgan's *Analyst Price Target*, and the disclosure that Moelis reviewed "publicly available research analysts' financial forecasts for AV Homes and Taylor Morrison" the S-4 fails to disclose which public equity research analysts were reviewed and each of their specific price targets.

124. With respect to the various analyses, the omitted information and key inputs are material to AV Homes shareholders, and their omission renders the summary of the financial advisors' fairness opinions materially incomplete and misleading.

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER)**

125. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

126. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

127. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

128. Defendants have issued the S-4 with the intention of soliciting stockholders support for the Proposed Merger. Each Defendant reviewed and authorized the dissemination of the S-4, which fails to provide critical material information regarding, among other things, the financial projections for the Company and the fairness opinion of AV Homes' financial advisors.

129. In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not materially misleading. Each Defendant, by virtue of their roles as officers and/or directors, or drafters of the solicitation, was aware of the omitted information but failed to disclose such information, in violation of Section 14(a). Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

130. Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not materially misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

131. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above

to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the S-4 and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

132. Defendants were, at the very least, negligent in preparing and reviewing the S-4. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

133. The misrepresentations and omissions in the S-4 are material to Plaintiff and the other members of the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

134. Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT)**

135. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

136. The Individual Defendants acted as controlling persons of AV Homes within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of AV Homes, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

137. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the S-4, including drafts, and other statements alleged by Plaintiff to be materially misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

138. Each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

139. In addition, as set forth in the S-4 sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and/or approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

140. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

141. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

142. Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the other members of the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the S-4;

C. Directing Defendants to account to Plaintiff and the other members of the Class for all damages sustained because of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: July 24, 2018

Respectfully Submitted,

NAPOLI SHKOLNIK, LLC
*/s/ R. Joseph Hrubiec*
R. Joseph Hrubiec, Esq. (#5500)
919 Market Street
Suite 1801
Wilmington, Delaware 19801
(302) 330-8025

Aaron Brody (*Pro Hoc Vice Forthcoming*)
**STULL, STULL, & BRODY**
6 East 45th Street
New York, NY 10017
Telephone: (212) 687-7230
Facsimile: (212) 490-2022
Email: abrody@ssbny.com

***Attorneys for Plaintiff***